UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GARY LABARBERA and FRANK FINKEL,
Trustees of the Local 282 International
Brotherhood of Teamsters Welfare, Pension,
Annuity, Job Training and Vacation Sick
Leave Trust Funds

                        Plaintiffs,      **SUPPLEMENTAL REPORT**
                                         **AND RECOMMENDATION**
    - v -
                                            CV 06-6641 (CPS)(VVP)
ROCKWALA INC. and ANDY WALA,

                        Defendants.
------------------------------------------------------------x

       The Honorable Charles P. Sifton adopted the undersigned's Report and Recommendation (R&R), which suggested that the plaintiffs Gary LaBarbera and Frank Finkel, Trustees of the Local 282 International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training and Vacation Sick Leave Trust Funds (hereinafter "the Funds ") be given an opportunity to supplement its submissions so as to cure deficiencies contained in the original request for damages as against the defaulting defendant, Rockwala, Inc., ("Rockwala").[1] The Trustees are the administrators of various employee benefit plans to which the defendant Rockwala was obligated to make contributions pursuant to a collective bargaining agreement ("CBA") between Local 282 ("the Union") and Rockwala. *See* Complaint ¶¶ 3, 9. The case involves Rockwala's alleged violations of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq*. ("ERISA"), by their failure to pay contributions to the Funds as required

---

[1] The first Report and Recommendation recommended that the defendant Andy Wala not be held liable.

by the terms of the CBA. *Id.* ¶¶ 11, 14, 19, 23. The plaintiffs seek to recover the delinquent contributions plus interest and liquidated damages under ERISA. The plaintiffs also request that the court award attorney's fees and costs.

## I. LIABILITY[2]

By virtue of the defendant's default, the well-pleaded allegations of the Complaint are deemed admitted, except as to the amount of the plaintiffs' damages. *See, e.g.*, *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 113 S. Ct. 1049 (1993); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). The Funds are multi-employer benefit trusts, organized under ERISA, and administered by representatives of employers and employees engaged in interstate commerce. *See* Complaint ¶¶ 2-5. The court is required to accept as true that Rockwala was obligated, under the CBA with Local 282, to pay fringe employee benefit contributions to the plaintiffs for all work performed by those employees of Rockwala within the trade and geographical jurisdiction of the union. *Id.* ¶¶ 9-10. Rockwala's obligations under the CBA are enforceable under ERISA. *See* 29 U.S.C. § 1132(a)(3). The court further accepts as fact the allegations that Rockwala owes fringe benefit contributions, and/or delinquent charges contractually due to the plaintiffs for the various weeks during the time period from June 11, 2004 through October 27, 2006. *Id.* ¶¶ 10-11, 14, 16, 18-19.

These facts are sufficient to establish the defendant Rockwala's liability for violations of ERISA which states, "every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . .

---

[2]Although the following discussion concerning liability was included in court's first Report and Recommendation, it is repeated here as background to the issue concerning damages.

. . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

## II. DAMAGES

Where, as here, a defendant has failed to make required contributions to employee benefit plans, ERISA provides a right of action for recovery of

    (A)    the unpaid contributions
    (B)    interest on the unpaid contributions
    (C)    an amount equal to the greater of -
          (i) interest on the unpaid contributions, or
          (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State Law) of the amount determined by the court under subparagraph (A).
    (D)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and
    (E)    such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

Having provided notice to the defaulting defendant, the court is able to receive affidavits in lieu of holding an evidentiary hearing on the appropriate amount of damages to be awarded. *See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 11 (2d Cir. 1997) ("We have held that, under rule 55(b)(2), it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment."); *accord, Fustok v. ContiCommodity Serv., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993). There being no objection by any party to that procedure, the court has received and considered affidavits submitted by the plaintiffs. The defendant has made no submissions as to damages.

Originally, the only submission provided by the plaintiffs was an affirmation by the attorney of record, Avram H. Schreiber. *See* Affirmation in Support of Default Judgment and

Permanent Injunction ("Schreiber Aff."). Annexed to the Schreiber Affirmation are the applicable CBAs and Trust Agreements which set forth Rockwala's contribution obligations and the rates at which they were to be paid. *Id.*, Exh. A-D. Although the affirmation provided considerable detail concerning the amounts of underpaid and unpaid contributions, as well as calculations of the applicable late charges, it suffered from fatal flaws. Most notably it was not made by a person with actual knowledge of the facts stated in the affirmation. The payment details asserted in the affirmation appear to be based on records maintained by the funds, but none of the records that apparently underlie the assertions of fact are annexed to the affirmation. Thus, the plaintiffs' attorney made assertions about when remittance reports[3] and payments were due, when they were actually received, and the amounts of the payments, but provided no support for those statements.

The plaintiffs have now supplemented the submissions by furnishing the court with an affidavit by Theresa Cody, the Director of Collections for the plaintiffs, who asserts that she is personally familiar with the facts and circumstances underlying the request for damages. *See* Supplemental Affirmation in Support of Plaintiffs' Claim for Damages ("Cody Aff.") ¶ 1. Although Cody does not specifically assert that she has reviewed the statements of fact set forth in the Schreiber affidavit, she makes specific reference to that affidavit and endorses the statements concerning principal, interest and liquidated damages that are set forth in the affidavit. The court infers that, given her position as Director of Collections, Ms. Cody has

---

[3]Remittance reports are standard forms prepared by the employer and submitted to the benefit funds which typically provide information about the total number of hours worked by a union's members during a given period of time, and the amounts of contributions that are owed to the various fringe benefit funds by the employer as a result of those hours worked.

reviewed the books and records of the plaintiffs and has insured that the statements of fact in the Schreiber affidavit are accurate. In addition, Cody's affidavit is supported by appropriate remittance reports that verify the amounts of contributions that were owed the plaintiffs. *Id.*, Exh. A. The court therefore concludes that the supplementation supplied by the Cody affidavit is sufficient, when coupled with the Schreiber affidavit, to provide the court with an appropriate evidentiary basis on which to recommend an award of damages.[4]

*1. Damages for Late Payments*

The plaintiffs are seeking interest and liquidated damages for a number of weeks during the period from June 2004 through September 2006 when payments made by Rockwala were untimely. Under the CBA an employer who does not post a surety bond is required to submit remittance reports and pay all benefits on a weekly basis. *See* Schreiber Aff. ¶ 11, Ex. B, § 14(A). If full payment of contributions is not made on time, the employer is required to pay interest at the rate of 1½% per month – which is equal to 0.05% per day or 18% per annum – on any delinquent amounts. *See id.*, ¶ 23 and Ex. F. In addition, under ERISA and the CBA, the plaintiffs are also entitled to liquidated damages in the amount of 20% of the untimely contributions. *See* 29 U.S.C. § 1132(g)(2)(C)(ii); Schreiber Aff. ¶ 23 and Ex. E at p. 31.

The Schreiber Affirmation details, for each of the weeks when payments were not timely made, the amount that was supposed to be paid, the date the payment was due, and the date

---

[4] It would be a better practice for the plaintiffs in the future to provide affidavits by people who handle the bookkeeping for the funds in question and who can therefore expressly assert that they have reviewed the books and records of the funds and know the information in the affidavits to be true. Copies of the various records reviewed, or at least samples if the records are too voluminous, should be annexed to the affidavits as well.

when the payment was actually received. *See* Schreiber Aff. ¶¶ 19, 24-73; *see also* Cody Aff. ¶ 3, Ex A. For example, for the week of June 18, 2004, the remittance reports and benefit fund contributions in the amount of $894 were due by June 25, 2004, but were not received by the plaintiffs until October 4, 2004, approximately 101 days late. Schreiber Aff. ¶ 25. Therefore, for the week of June 18, the plaintiffs are seeking interest in the amount of $45.15, calculated at the rate of 0.05% over the 101 days, as well as liquidated damages which, at 20% of the principal, totals $178.90. *Id.* The remittance report for the week of June 18, 2004, attached to the Cody Affirmation, indeed confirms that $894 in dues were owed for that period. *See* Cody Aff., Ex. A, at 2. Similar computations are provided in the Schreiber Affirmation, and confirmed by the remittance reports attached to the Cody Affirmation, for each of the weeks for which damages for untimely payments is sought. Schreiber Aff. ¶¶ 24-73; Cody Aff., Ex A. For all of the weeks in question, the total amount of interest comes to $1,186.55, and the total amount of liquidated damages comes to $12,034.53.

   *2. Damages for Unpaid Contributions as Reflected in Remittance Reports*

Next, for three weeks from July 23, 2004 through the week ending August 6, 2004, the week ending July 8, 2005, and the week ending September 22, 2006 the plaintiffs seeks damages – including interest and liquidated damages – because Rockwala either failed to pay, or underpaid, the benefit fund contributions reflected in the remittance reports that they submitted. *See* Schreiber Aff. ¶¶ 20, 74-85. For these weeks, the plaintiffs are entitled to the following relief:

   A.   Week of July 23, 2004

   1.   Unpaid ERISA Contributions: $603.42
   2.   Interest: $507.64 through March 13, 2009, plus $.30 per day to the date of judgment

    3. Liquidated Damages: $120.68

 B. Week of July 30, 2004

    1. Unpaid ERISA Contributions: $755.28
    2. Interest: $635.49 through March 13, 2009, plus $.38 per day to the date of judgment
    3. Liquidated Damages: $151.06

 C. Week of August 6, 2004

    1. Unpaid ERISA Contributions: $119.82
    2. Interest: $100.22 through March 13, 2009, plus $.06 per day to the date of judgment
    3. Liquidated Damages: $23.96

 D. Week of July 8, 2005

    1. Unpaid ERISA Contributions: $84.00
    2. Interest: $54.90 through March 13, 2009, plus $.04 per day to the date of judgment
    3. Liquidated Damages: $16.80

 E. Week of September 22, 2006

    1. Unpaid ERISA contributions: $2,056.09
    2. Interest: $921.29 through March 13, 2009, plus $1.04 per day to the date of judgment
    3. Liquidated Damages: $411.22.

*3. Damages for Unpaid Contributions: Checks Returned for Insufficient Funds*

Next, the plaintiffs seeks damages for delinquent contributions for various weeks when checks submitted as payment for contributions owed, as reflected in accompanying remittance reports, were returned for insufficient funds. Schreiber Aff. ¶¶ 86-90, Exh. I. For each of the ten checks that were returned, the plaintiffs are entitled under an amendment to the CBA to an administrative fee of $75.00. *See* Schreiber Aff. ¶ 23 and Ex. G. Therefore the plaintiffs are

entitled to administrative costs of $750.00. In addition, damages for the unpaid contributions are as follows:

    A.    Week of June 30, 2006

        1.    Unpaid ERISA contributions: $67.20
        2.    Interest: $30.71 through March 13, 2009, plus $.03 per day to the date of judgment
        3.    Liquidated Damages: $13.44

    B.    Week of July 21, 2006

        1.    Unpaid ERISA contributions: $1,000
        2.    Interest: $479 through March 13, 2009, plus $.50 per day to the date of judgment
        3.    Liquidated Damages: $200

    C.    Week of September 15, 2006

        1.    Unpaid ERISA contributions: $1,520.20
        2.    Interest: $685.52 through March 13, 2009, plus $.76 per day to the date of judgment
        3.    Liquidated Damages: $304

    D.    Week of October 27, 2006

        1.    Unpaid ERISA contributions: $3,833.90
        2.    Interest:$1,650.43 through March 13, 2009, plus $1.92 per day to the date of judgment
        3.    Liquidated Damages: $766.78

*3. Damages for Weeks When Neither Remittance Reports Nor Contributions Were Submitted*

Lastly, the plaintiffs seek delinquent contributions for the time period from December 2006 through March 2007, when the defendant failed to submit any reports or payments. Schreiber Aff. ¶ 91. When the defendant fails to submit any reports for a given period, the plaintiffs are entitled to calculate the benefits that would have been owed pursuant to a formula. The formula allows the plaintiffs to assess contributions for an unreported period by using the

number of hours from the month where the largest number of hours were reported during the previous 12-month period, and increasing the number of hours by ten percent. *Id.* ¶¶ 92-94 and Exh. D, E. The month of September 2006, for which 216 hours were reported, provides the base point for application of the formula here. *Id.* ¶¶ 94-95. Thus, adding an additional ten percent, the plaintiffs are entitled to contributions for the months of December 2006 through March 2007 calculated on the basis of 237.6 hours of work. *Id.* ¶ 95. Based upon that number of hours, the plaintiffs are entitled to the following relief:

    A.    December 2006

        1.    Unpaid ERISA contributions: $6,344.51
        2.    Interest: $2,352.44 through March 13, 2009, plus $3.17 per day to the date of judgment
        3.    Liquidated Damages: $1,268.90

    B.    January 2007

        1.    Unpaid ERISA contributions: $6,344.51
        2.    Interest: $2,250.93 through March 13, 2009, plus $3.17 per day to the date of judgment
        3.    Liquidated Damages: $1,268.90

    C.    February 2007

        1.    Unpaid ERISA contributions: $6,344.51
        2.    Interest: $2,162.11 through March 13, 2009, plus $3.17 per day to the date of judgment
        3.    Liquidated Damages: $1,268.90

    D.    March 2007

        1.    Unpaid ERISA contributions: $6,344.51
        2.    Interest: $2,066.94 through March 13, 2009, plus $3.17 per day to the date of judgment
        3.    Liquidated Damages: $1,268.90

### III. ATTORNEY'S FEES AND COSTS

The plaintiffs are also seeking attorney's fees and costs, both of which are available under ERISA. *See* 29 U.S.C. 1132(g)(2)(D). The CBA also permits the plaintiffs to recover any attorney's fees and costs expended to collect delinquent contributions, whether or not an action was filed. *See* Schreiber Aff., Exh E at 30. To aid the court in determining the amount of reasonable attorney's fees, the plaintiffs are required to submit evidence that provides a factual basis for a fee award. *Hensley v. Eckerhart,* 461 U.S. 424, 433-434 (1983). In this Circuit, that entails submitting contemporaneous billing records documenting the date, the hours expended, and the nature of the work done, for each attorney. *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148, 1154 (2d Cir. 1983). The court must then determine whether the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 406 U.S. 886, 896 n.22, 104 S. Ct. 1541 (1984); *Luciano v. Olsten Corp.,* 109 F.3d 111, 115 (2d Cir. 1997). Where adequate records are not submitted, the court may deny fees altogether or reduce the award. *See id.,* 711 F.2d at 1148; *Private Sanitation Union Local 813, International Brotherhood of Teamsters v. Gaeta-Serra Associates, Inc.,* Dkt. No. CV 02-5526, 2005 WL 2436194, at *3-4 (E.D.N.Y. August 12, 2005). In addition, the court may exclude hours from the lodestar calculation that it finds to be excessive, duplicative, or unnecessary. *Duke v. County of Nassau,* 2003 WL 23315463, at *1 (E.D.N.Y. Apr. 14, 2003), *citing Hensley,* 461 U.S. at 434, *Luciano,* 109 F.3d at 116.

In reviewing the submissions on this issue, the court finds that the attorney time sheets are sufficiently detailed and that the rates charged by counsel are appropriate.[5] The plaintiffs seek an award of attorney's fees in the amount of $22,189.69, which at first blush gives the court some pause. However, a large portion of the plaintiffs' attorneys' fees were accrued during the two-and-a-half year period from July 2004 until December 2006 when counsel engaged in unsuccessful attempts to recover the unpaid contributions before litigation was initated.[6] As noted above, under the CBA the plaintiffs are contractually entitled to recover such legal expenses. Once the matter went into litigation, substantial effort was necessary to review and collate the information concerning the unpaid obligations in order to draft the complaint, and to prepare the submissions on the motion for a default judgment. In addition, the court notes that a substantial amount of time billed was accrued by paralegals, thus keeping the fees somewhat within reason. The court therefore finds that the fees, although high, are justifiable.

The plaintiffs also seek an award for costs. A prevailing party is entitled to compensation for out-of-pocket expenses that are normally charged to the client. *United States Football League v. National Football League*, 887 F.2d 408, 416 (2d. Cir. 1989). The plaintiffs' submissions disclose adequately detailed explanations of expenses including filing fees, service of process fees, copying costs, and postage fees. *See* Schreiber Aff., Ex. J. These types of expenditures are generally compensable, *see, e.g., Levy v. Powell*, No. CV 00-4499, 2005 WL 1719972, at *12 (E.D.N.Y. July 22, 2005); *Rotella v. Board of Educ. of City of New York*, No. CV-01-0434, 2002

---

[5]A partner billed from $275 to $300 per hour, associates billed at $200 and $225 per hour, and the rates for paralegals were $70 and $80 per hour.

[6]According to the court's calculations, based upon the time sheets provided, $11,980.45 was attributed to prelitigation fees, and $10,209.24 was billed to litigate the instant action.

WL 59106, at *1 (E.D.N.Y. Jan. 17, 2002); *Hine v. Mineta*, 253 F. Supp. 2d 464, 467 (E.D.N.Y. 2003), and the court finds no basis to deny an award for those expenses here. Therefore, the court recommends that the plaintiffs be awarded $878.78 for costs.

## CONCLUSION

In accordance with the above considerations, the undersigned hereby RECOMMENDS that damages be awarded against the defendant Rockwala, Inc. for the following amounts:

1. Unpaid ERISA contributions to the Funds in the amount of $35,417.95, interest of $15,084.17 through March 13, 2009, plus $17.71 per day to the date of judgment;

2. Liquidated damages under ERISA in the amount of $19,118.07;

3. Administrative costs under the CBA in the amount of $750.00; and

4. Attorney's fees and costs in the amount of $23,068.47.

\*        \*        \*        \*        \*        \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g.*, *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Counsel for the plaintiffs shall serve a copy of this Report and Recommendation on the defendant by regular mail and file proof of such service in the record.**

                                                      **SO ORDERED:**

                                                  */s/ Viktor V. Pohorelsky*

                                                  VIKTOR V. POHORELSKY
                                                  United States Magistrate Judge

Dated: Brooklyn, New York
       April 1, 2009